In his opinion, Judge Fuentes examines the second prong of Marzzarella only "out of an abundance of caution," because he had determined that the challengers failed step one. Id. , at 396. He then concluded *876 that intermediate scrutiny is the correct standard because the felon-in-possession ban "constrains the rights of persons who, by virtue of their prior criminal conduct, fall outside of the core of the Second Amendment's protections." Id. , at 397. We first feel constrained to note that this conclusion is in conflict with Judge Fuentes' cautious procession to step two; by proceeding to the second prong of the Marzzarella analysis, Judge Fuentes was employing an "even if" argument assuming that the challengers had met the first prong of the analysis. Id. , at 396. Assuming the challengers had met the first prong of Marzzarella would mean that the challengers had successfully distinguished themselves from the class of people traditionally banned from firearm possession-in Judge Fuentes' words, that they have demonstrated that they are not part of the class of "persons who commit serious crimes" that "are disqualified from asserting their Second Amendment rights." Id. , at 387. If the challengers had successfully demonstrated that they are not part of the class of persons that lose their Second Amendment rights, it is unclear how Judge Fuentes could find that the complete deprivation of their right to possess firearms would not "burden[ ] the 'core' Second Amendment right." Id. , at 398.
Irrespective of the reasoning, a majority of the Third Circuit in Binderup agreed that intermediate scrutiny applied in joining either Judge Ambro's or Judge Fuentes' opinions. However, the two opinions differed in their application of intermediate scrutiny. Both agreed on the general premise of intermediate scrutiny-the Government bears the burden of proof to demonstrate that the challenged law involves an important government interest and that there is a "reasonable fit" between that interest and the challenged law. Binderup , 836 F.3d at 354, 399. Judge Ambro interprets this to require the Government to adduce evidence explaining why banning people in the Plaintiff's position from firearm possession is a reasonable means to further its governmental interest. Id. , at 354-355. To this end, Judge Ambro found that the Government's reliance on general statistical studies that felons are more likely to commit violent crimes was misplaced. Id. Instead, the Government needed to present reliable evidence "that people with the Challengers' backgrounds were more likely to misuse firearms or were otherwise irresponsible or dangerous." Id. , at 355.
Judge Fuentes takes issue with this analysis, stating that "Judge Ambro's level of specificity is problematic." Id. , at 396. Judge Fuentes concludes that the Government satisfied its burden that the law is a "reasonable fit" to its important interest in public safety because it pointed to studies that explore the link between past criminal conduct and future gun violence, even without any link to the challenger's specific characteristics. Id. , at 400.
The problem with employing Judge Fuentes' high level analysis of intermediate scrutiny is that it would effectively foreclose all as-applied challenges. There is a reason why the challengers in Binderup and our challengers Keyes and Yox did not bring facial challenges to the respective sections of § 924(g) -they recognize that, generally, the Government does have an important interest at play and that the dispossession of certain groups of people are reasonable to pursue that interest. To allow the Government to defeat an as-applied challenge by demonstrating that the statute was a reasonable fit to its important interest in general would mean that the challengers' efforts to distinguish themselves from the overall class are rendered futile. In essence, without considering the challengers' specific characteristics, the second step of the Marzzarella framework is the same in both facial and as-applied *877 challenge, rendering the first prong in as-applied challenges superfluous and done in vain.
Judge Fuentes recognized this reality by questioning whether as-applied challenges to the felon-in-possession statute are even permissible at all, and he ultimately concluded that they are not. Id. , at 401. He points out that "Second Amendment limitations like the felon-in-possession ban and the ban on mentally-ill persons possessing guns" are intended to meet a governmental objective that "is neither logistical nor abstract," but "quite simply, to prevent armed mayhem and death." Id. , at 402. Because of the high import of the governmental interest, and the costly consequences should a court make a wrong decision, Judge Fuentes concludes that as-applied challenges are "too error-prone to support the government's objective of preventing armed violence." Id. , at 403.
In anticipating an overbreadth argument, Judge Fuentes notes that federal law lifts the felon-in-possession ban when a conviction has been expunged, set aside, or pardoned. Id. , at 406. Unfortunately, Judge Fuentes' reasoning is inapplicable to § 925(g)(4) because people in Keyes' position have no recourse to have their prior commitments expunged, set aside, or pardoned. The threat of overbreadth is much more potent in this context where a prior commitment will deprive firearm rights in perpetuity.
For support from First Amendment doctrine that some laws cannot withstand as-applied challenges, Judge Fuentes points to United Public Workers of America (C.I.O.) v. Mitchell , 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). There, the Supreme Court confronted an as-applied challenge to a law that prohibited government employees from engaging in certain kinds of partisan political activity. The challenger argued that he was not a type of government employee whose conduct was likely to raise integrity concerns, which was the governmental interest behind the regulation. Mitchell , 330 U.S. at 101, 67 S.Ct. 556. The Court rejected the argument, observing that "[w]hatever differences there may be [in the class of persons]... are matters of detail for Congress." Id. , at 102, 67 S.Ct. 556.
We do not find this analogy to be persuasive to consideration of § 924(g)(4). The law at issue in Mitchell foreclosed certain First Amendment rights by regulating one subset of speech; the dispossession of those previously committed forecloses the entirety of their Second Amendment rights. Further, the law in Mitchell restricted First Amendment rights for those who have made the choice to work for the government. Should they become dissatisfied with the abridgement on their First Amendment rights, they have the option to terminate their employments and have their rights restored. This is not true for those who have been previously committed. Keyes and those like him never made a cognitive choice to suffer from mental illness and cannot simply make a decision to remove themselves from the class of people restricted by § 924(g)(4) even once they are healthy and have demonstrated competency with firearms. Because § 924(g)(4) operates to completely eviscerate Second Amendment rights for those who have demonstrated that they are not within the class of persons traditionally barred from possession of firearms, we cannot, and will not, conclude that their differences from the general class of excluded persons are simply "details for Congress."
Finally, Judge Fuentes discusses the difficulty of considering as-applied challenges to the felon-in-possession statute. Binderup , 836 F.3d at 407-410. His concerns about the consideration of as-applied *878 challenges for § 924(g)(1) are equally applicable to those challenging § 924(g)(4) ; he cites to problems with consistency, fair warning, and the burden on the district courts. Id. However, for all of the reasons that we have distinguished the felon-in-possession statute from the prohibition on possession by the previously committed, including the lack of a conscious choice, the lack of a violation in the law, and the lack of any "unvirtuous" prior act, we cannot foreclose as-applied challenges to § 924(g)(4) simply because of the difficulty in administration.
Because we find that Judge Fuentes' reasoning is inapplicable to a challenge to § 924(g)(4), and because his high level analysis of means-end scrutiny would effectively foreclose as-applied challenges to § 924(g)(4), we will follow Judge Ambro's lead and conduct our means-end scrutiny analysis with a lens towards Keyes' specific circumstances.
The Defendants have clearly established an important, and indeed, compelling, interest served by the dispossession of those previously involuntarily committed. Section 924(g)(4) serves to protect public safety and cut down on firearm violence committed as a result of mental illness. (Doc. 87, p. 19). Keyes does not appear to dispute this governmental interest.
However, it is the Defendants' burden to present "evidence explaining why banning people like" Keyes "promotes public safety." Binderup , 836 F.3d at 353-354. Instead, Defendants refer to evidence illustrating how disarming those who have been previously involuntarily committed in general promotes public safety, and refer to their previous factual arguments that Keyes remains at a heightened risk for relapse. (Doc. 87, pp. 22-23). Having already concluded that Keyes has satisfactorily distinguished his circumstances from those in the general class of persons barred by § 924(g)(4), the Defendants' evidence is insufficient. We have been presented with no evidence to indicate that disarming those who went through a period of mental illness and suicide attempts over a decade ago and who have regularly carried firearms in their professional capacity since that time reasonably fits within the governmental interest to promote safety. As such, 18 U.S.C. § 924(g)(4) cannot withstand intermediate scrutiny in the face of Keyes' as-applied challenge. Enforcement of the statute against Keyes therefore violates his right to keep and bear arms-a right guaranteed to him by the Second Amendment to the United States Constitution.
V. CONCLUSION
For all of these reasons, we shall grant summary judgment in favor of Plaintiff Michael Keyes. We freely acknowledge our mindfulness of the fact that this decision is rendered in a time when our country appears awash in gun violence. Given the tenor of the times, it would be easy and indeed alluring to conclude that Plaintiff lacks any recourse. But to do so would be an abdication of this Court's responsibility to carefully apply precedent, even when, as here, it is less than clear. Our jurisprudence and the unique facts presented guide us to the inescapable conclusion that if the Second Amendment is to mean anything, and it is beyond peradventure that it does, Plaintiff is entitled to relief.
A separate order shall issue in accordance with this ruling.