<div style="border:1px solid black; padding:10px;">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3876-23
          A-3886-23

IN THE MATTER OF NORHAN
MANSOUR, JERSEY CITY
POLICE DEPARTMENT.

_____

IN THE MATTER OF OMAR
POLANCO, JERSEY CITY
POLICE DEPARTMENT.

_____

Argued December 16, 2025 – Decided May 1, 2026

Before Judges Gooden Brown, Rose and Torregrossa-O'Connor.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2024-484 and 2024-814.

Kyle J. Trent argued the cause for appellant Jersey City Police Department (Apruzzese, McDermott, Mastro & Murphy, PC, attorneys; Arthur R. Thibault Jr., of counsel and on the briefs; Kyle J. Trent and Timothy J. Dunn, on the briefs).

Michael P. Rubas (Law Offices of Michael Peter Rubas, LLC) argued the cause for respondents Norhan Mansour and Omar Polanco.

Melina Layerenza, Assistant Attorney General, argued the cause for respondent Civil Service Commission (Matthew J. Platkin, Attorney General, attorney; Michael L. Zuckerman, Deputy Solicitor General, of counsel; Liza B. Fleming and Mark A. Gulbranson, Jr., Deputy Attorneys General, on the brief).

PER CURIAM

In these consolidated appeals, the Jersey City Police Department (JCPD) challenges two July 24, 2024 Civil Service Commission (CSC) decisions denying reconsideration and a stay of the CSC's prior decisions directing the JCPD to reinstate police officers Norhan Mansour and Omar Polanco, both of whom were removed after testing positive for cannabinoids. In its decisions, the CSC held, by removing the officers for their off-duty use of regulated cannabis, the JCPD violated the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56. The JCPD argues the federal Gun Control Act (GCA), 18 U.S.C. §§ 921-934, preempts CREAMMA. Unpersuaded, we affirm.[1]

---

[1] We simultaneously issue our opinion in another matter affirming the CSC's decision rejecting the JCPD's federal law preemption argument: In re Patten, Jersey City Police Dep't, A-3126-23.

I.

The undisputed facts in both matters are straightforward and their events proceeded along parallel paths. We summarize the pertinent factual and procedural posture.

In September 2022, the JCPD administered random drug tests to Mansour and Polanco. After both officers tested positive for the presence of cannabinoids (THC), they were separately interviewed by members of the Internal Affairs Unit. Both officers acknowledged they used cannabis at some point before their random drug tests, but stated they never used unregulated cannabis. Mansour produced receipts for three purchases made in June, July, and August 2022; Polanco acknowledged he did not retain the receipts from purchases made prior to his drug test.

The JCPD issued notices of immediate suspension and preliminary disciplinary action (PNDA), charging both officers with violating state law, state regulations, and departmental rules. In the PNDAs, the JCPD alleged the officers' cannabis use resulted in their inability "to perform an essential function of [their] position[s] as . . . police officer[s] – carry and possess a firearm and ammunition." The PNDAs did not assert the officers used cannabis on duty nor the cannabis they used was unregulated.

3

Following separate departmental hearings, in March 2023, the JCPD issued amended final notices of disciplinary action, sustaining most of the charges and removing both officers from their positions. The matters were separately transmitted to the Office of Administrative Law as contested cases and heard on cross-motions for summary decision before different Administrative Law Judges (ALJ).

A.  The Mansour Matter

In her decision, the ALJ summarized the facts that led to the charges against Mansour. The ALJ also recognized, "In April 2022, [the] JCPD Police Director and Deputy Chief issued an order stating that officers were prohibited from using cannabis on or off duty as it is illegal under federal law for cannabis users to possess, carry or use firearms." The ALJ further observed when Mansour was tested "[i]n September 2022[,] regulated marijuana, cannabis was legal in New Jersey and available for purchase from in[-]state cannabis dispensaries." She further noted the JCPD did not allege Mansour used cannabis or was impaired while on duty, or used unregulated cannabis.

Turning to her legal conclusions, the ALJ addressed the issues raised, including the JCPD's preemption argument, in view of the governing legal

4

principles. The ALJ recognized in August 2021, prior to Mansour's random drug screening, "N.J.S.A. 24:6I-52 became operative" and states, in relevant part:

> No employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions, or other privileges of employment because that person does or does not smoke, . . . or otherwise use cannabis items, and an employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid from engaging in conduct permitted under [CREAMMA].
>
> [N.J.S.A. 24:6I-52(a)(1).]

The ALJ further observed CREAMMA "authorize[s] drug testing of employees by their employer when there is reasonable suspicion of the employee's use of cannabis while working or when there are observable signs of intoxication; and random drug testing is also permitted but only to determine use during prescribed work hours." Finding the JCPD was subject to CREAMMA, and the lack of any evidence in the record Mansour displayed any "signs of intoxication, suspected drug use, or impairment during work hours," the ALJ concluded Mansour's termination violated N.J.S.A. 24:6I-52(a)(1) and "the JCPD Rules that form[ed] the basis of Mansour's removal [we]re preempted by [CREAMMA]" because the Rules permitted "removal or discipline of a

5

police officer simply for testing positive for the use of cannabinoids and nothing more."

In reaching her decision, the ALJ was not persuaded by the JCPD's contention that sections 922(d) and (g) of the GCA preempt CREAMMA under a "conflict preemption" theory. The ALJ elaborated:

> The [JCPD] has failed to demonstrate that a "positive conflict" exists between [CREAMMA] and the [GCA] because even if marijuana consumption remains unlawful under federal law, nothing in [CREAMMA] requires anyone to violate federal law, and while [CREAMMA] provides immunity from State prosecution and from adverse employment actions, it does not purport to offer any immunity from any violation of federal law – the federal government is still free to prosecute cannabis users in New Jersey even though State prosecutors and law enforcement may not.

Although the JCPD did not include its exceptions to the ALJ's initial decision in its appellate appendix, we glean from the CSC's August 2, 2023 decision that the JCPD challenged the ALJ's conclusion that the GCA does not preempt CREAMMA. Following its de novo review of the record, the CSC adopted the ALJ's factual and legal conclusions, reversing Mansour's removal. Accordingly, the CSC reinstated Mansour "with mitigated back pay, benefits, and seniority" and "reasonable counsel fees" under the governing regulations. See N.J.A.C. 4A:2-2.10, -2.12.

Thereafter the JCPD moved for reconsideration and a stay of the CSC's August 2, 2023 decision, and Mansour moved for enforcement. On July 24, 2024, the CSC issued a final administrative action denying the JCPD relief and granting Mansour's request for enforcement. In doing so, the CSC noted its previous decision was "further supported by 18 U.S.C. 925(a)(1) of the [GCA] which expressly exempts from its proscriptions, firearms or ammunition 'issued for the use of . . . any State or . . . political subdivision thereof."

## B. The Polanco Matter

In her August 18, 2023 initial decision, the Administrative Law Assignment Judge (ALAJ) summarized the facts that led to the charges against Polanco. Similar to the ALJ in the Mansour matter, the ALAJ recognized the JCPD tested Polanco in September 2022, after "regulated" cannabis was legalized in New Jersey and the JCPD did not allege Polanco used cannabis or was impaired while on duty. Nor did the JCPD assert Polanco used unregulated cannabis.

The ALAJ also cited the pertinent sections of CREAMMA and concluded Polanco's termination violated N.J.S.A. 24:6I-52(a)(1). Noting the JCPD's preemption argument echoed its contentions in the Mansour matter, the ALAJ ultimately concurred with her colleague's analysis and conclusions set forth in

7

the Mansour initial decision. Accordingly, the ALAJ concluded the JCPD "failed to sustain its burden of proof as to any of the charges."

Again, the JCPD did not include its exceptions to the ALAJ's initial decision in its appellate appendix. But we glean from the CSC's September 20, 2023 decision that the JCPD challenged the ALAJ's conclusion that the GCA does not preempt CREAMMA. Following its de novo review of the record, the CSC adopted the ALAJ's factual and legal conclusions, reversing Polanco's removal. Accordingly, the CSC reinstated Polanco "with mitigated back pay, benefits, and seniority" and "reasonable counsel fees" under the governing regulations. See N.J.A.C. 4A:2-2.10, -2.12.

Thereafter the JCPD moved for reconsideration and a stay of the CSC's September 20, 2023 decision, and Polanco moved for enforcement. On July 24, 2024, the CSC issued a final administrative action denying the JCPD relief and granting Polanco's request for enforcement. In doing so, similar to its reconsideration decision in Mansour, the CSC noted its previous decision was "further supported by 18 U.S.C. 925(a)(1) of the [GCA] which expressly exempts from its proscriptions, firearms or ammunition 'issued for the use of . . . any State or . . . political subdivision thereof."

C.  The JCPD's Reprised Contentions

Before us, the JCPD raises the same legal challenge to the July 24, 2024 CSC decisions issued in both matters.  The JCPD maintains CREAMMA is preempted by federal law as the JCPD cannot comply with both CREAMMA's prohibition on adverse employment actions for regulated cannabis use and the GCA's mandate that known users of "any controlled substance" shall not "possess" or "receive" "any firearm or ammunition."  See 18 U.S.C. § 922(d)(3), (g)(3).  The JCPD acknowledges the CSC's position that the GCA exempts firearms when used for state purposes, but argues the exemption is inapplicable here because the JCPD requires officers to purchase their own firearms and does not provide them with the certifications required to place their firearms beyond the scope of the GCA.

The CSC argues the GCA's exemption applies whether the JCPD or the individual officers purchase the firearm.  To the extent the JCPD's policy requiring officers to obtain personally owned firearms without a JCPD-issued certification creates a conflict, the CSC argues the JCPD may not support a preemption argument through a self-created conflict.  During oral argument before us the CSC asserted, in its preemption argument, the JCPD is an "outlier."

A-3876-23

Our scope of review of an administrative agency decision is circumscribed. See In re Stallworth, 208 N.J. 182, 194 (2011). An agency decision will be upheld "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008); see also Stallworth, 208 N.J. at 194. "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"However, we are not bound by the agency's interpretation of a statute or resolution of a question of law." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001); see also Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018). "Because an agency's determination on summary decision is a legal determination, our review is de novo." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015). We also review de novo preemption determinations and "the issues of statutory interpretation necessary to the preemption inquiry."

In re Altice USA, Inc., 253 N.J. 406, 416 (2023); see also In re Rutgers, the State Univ. of N.J., 262 N.J. 523, 533 (2026).

Well-settled principles guide our review of preemption issues. Pursuant to the Supremacy Clause of the United States Constitution, "Congress is empowered to preempt state law." Altice, 253 N.J. at 416; see also U.S. Const. art. VI, cl. 2. Because "States are independent sovereigns in our federal system," Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996), however, "the preemption analysis begins with the 'assumption that the historic police powers of the States [are] not to be superseded by [a] [f]ederal [a]ct unless that was the clear and manifest purpose of Congress,'" Altice, 253 N.J. at 416 (alterations in original) (quoting Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008)). For example, in the labor law context, the United States Supreme Court has long recognized "the establishment of labor standards falls within the traditional police power of the state." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987).

"Under the Supremacy Clause, federal law preempts state law in three circumstances." Altice, 253 N.J. at 417. In broad strokes, those categories are: (1) explicit preemption, "Congress explicitly preempts state law"; (2) field preemption, "Congress regulates conduct in a field it intended to occupy

11

exclusively"; and (3) conflict preemption, where there is an actual conflict between state and federal law. Ibid.

To support its argument in the present matters, as it did before the CSC, the JCPD raises conflict preemption. "Conflict preemption occurs in two scenarios." Hager v. M&K Constr., 246 N.J. 1, 29 (2021). Conflict exists when: (1) "compliance with both federal and state regulations is a physical impossibility"; or (2) a state's law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." In re Reglan Litig., 226 N.J. 315, 329 (2016) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)). Based on its assertion that the JCPD "cannot comply with both CREAMMA and the [GCA]," the JCPD apparently raises only an impossibility argument.

Under the GCA, Congress imposed various requirements and prohibitions on the provision of firearms and ammunition to certain groups. Pertinent to this appeal, it is "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe such person . . . is an unlawful user of or addicted to any controlled substance." 18 U.S.C. § 922 (d)(3); see also 18 U.S.C. § 922 (g)(3) (prohibiting any such person from, in relevant part, possessing or receiving any firearm or

A-3876-23

ammunition).  It is undisputed cannabis is a controlled substance under federal law.

As the CSC correctly states, in the GCA, Congress distinguished between firearms and ammunition issued for private and government use.  When firearms and ammunition are issued for use by the government, most of the GCA's provisions are removed:

> The provisions of this chapter, except for sections [not at issue here,] shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of . . . any State or any department, agency, or political subdivision thereof.
>
> [18 U.S.C. § 925(a)(1) (emphasis added).]

Accordingly, when firearms or ammunition are "issued for the use of" a police department, such as the JCPD, the restrictions imposed under 18 U.S.C. § 922 are eliminated.  See, e.g., Hyland v. Fukuda, 580 F.2d 977, 979 (9th Cir. 1978) (recognizing "the plain terms of section 925(a)(1) remove firearms owned by the state and used exclusively for its purposes from the limitations of section 922" (emphasis added)); Clifton v. U.S. Dep't of Justice, 615 F. Supp. 3d 1185, 1190 (E.D. Cal. 2022); Keyes v. Sessions, 282 F. Supp. 3d 858, 866 (M.D. Pa. 2017) (noting under section 925(a)(1), the plaintiff was permitted to "possess

and operate numerous firearms" as a State Police trooper, but not "in his personal capacity under federal law").

In section 927, Congress expressed the GCA's effect on state law:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

As we have observed, "the [GCA] was designed to have a preemptive effect only where there is 'a direct and positive conflict' when state law and the federal statute 'cannot be reconciled.'" In re Carry Permit of Andros, 403 N.J. Super. 271, 279 (App. Div. 2008) (quoting City of Gary v. Smith & Wesson Corp., 94 F. Supp. 2d 947, 951 (D. Ind. 2000)); see also 18 U.S.C. § 927. We discern no conflict here.

In summary, we conclude the JCPD may comply with both the GCA and CREAMMA. Because the GCA does not preempt CREAMMA, we discern no error in the CSC's decision that Mansour's and Polanco's use of regulated cannabis, off duty, could not sustain the JCPD's removal decisions. We therefore affirm the CSC's July 24, 2024 decisions in both matters.

14

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3876-23