**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3126-23

IN THE MATTER OF
MONTAVIOUS PATTEN,
JERSEY CITY POLICE
DEPARTMENT.

_____

Submitted November 12, 2025 – Decided May 1, 2026

Before Judges Gooden Brown and Rose.

On appeal from the New Jersey Civil Service Commission, Docket No. 2024-1054.

Law Offices of Michael Peter Rubas, LLC, attorney for appellant/cross-respondent Montavious Patten (Michael P. Rubas, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Civil Service Commission (Sookie Bae-Park, Assistant Attorney General, of counsel; Mark A. Gulbranson, Jr., Deputy Attorney General, on the brief).

Apruzzese, McDermott, Mastro & Murphy, PC, attorneys for respondent/cross-appellant Jersey City Police Department (Arthur R. Thibault, Jr. and Kyle J. Trent, of counsel and on the briefs).

PER CURIAM

Montavious Patten, a former officer with the Jersey City Police Department (JCPD), appeals from a May 10, 2024 final Civil Service Commission (CSC) decision upholding his termination by the City of Jersey City. On de novo review, the CSC accepted and adopted the factual findings and legal conclusions of an administrative law judge (ALJ), who issued an initial decision recommending Patten's removal for violating the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, N.J.S.A. 2C:35-10a, N.J.A.C. 17:30-2.1(b)(1), and related regulations, by purchasing cannabis from an unlicensed individual. The JCPD cross-appeals from the CSC's finding that the JCPD did not sustain all administrative charges against Patten, contending the federal Gun Control Act of 1968 (GCA), 18 U.S.C. §§ 921-934, preempts CREAMMA. For the reasons that follow, we affirm the May 10, 2024 decision in its entirety.[1]

I.

The genesis of the disciplinary charges was Patten's positive result for the presence of cannabinoids (THC) following a random drug test administered by

---

[1] We simultaneously issue our opinions in two other matters affirming the CSC's decisions rejecting the JCPD's federal law preemption argument: In re Mansour, Jersey City Police Dep't, No. A-3876-23; In re Polanco, Jersey City Police Dep't, No. A-3886-23.

the JCPD on January 27, 2023. During his interview with the Internal Affairs (IA) Unit, Patten acknowledged he smoked cannabis two or three weeks before the test, while off duty, to manage pain from an injury. Patten did not dispute he purchased cannabis from his friend, "Sal," but acknowledged he did not know Sal's last name or phone number. Patten was "pretty sure" Sal purchased the cannabis from a dispensary, but Patten did not have a receipt for the cannabis Sal sold him. Patten stated the cannabis was contained in a sealed "black bag with a percentage like a name on the front of it." Patten claimed this was his first and only purchase of cannabis. He acknowledged he disregarded the JCPD's policy against cannabis use to manage pain.

In the March 9, 2023 preliminary notice of disciplinary action (PNDA) that followed, the JCPD suspended Patten without pay pursuant to the charges filed against him. Those charges included: insubordination, N.J.A.C. 4A:2-2.3(a)(2); inability to perform duties, N.J.A.C. 4A:2-2.3(a)(3); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12); incapacity, N.J.S.A. 40A:14-147; conduct, JCPD Rule 3:108; obedience to laws, rules, regulations, and orders, JCPD Rule 3:123, neglect of duty, JCPD Rule 3:126; orders, JCPD Rule 3:127; rules and regulations, JCPD Rule 3:157; and

code of ethics, JCPD Rule 3:169. On April 12, 2023, the JCPD issued an amended PNDA, adding charges for: narcotics use, JCPD Rule 3:164; and violating the Attorney General's (AG) law enforcement drug testing policy (AG policy).

After an administrative hearing, the JCPD issued a final notice of disciplinary action (FNDA), sustaining all charges and removing Patten from his employment. The matter thereafter was transmitted to the Office of Administrative Law as a contested case.

During the single-day hearing before the ALJ, Patten testified on his own behalf and the JCPD presented the testimony of a sergeant assigned to the IA Unit. The ALJ also considered fifteen documentary exhibits, including the: PNDA; amended PNDA; FNDA; AG policy; JCPD's Rules and Regulations; JCPD General Order 12-18; Patten's toxicology report; and the recording of Patten's IA interview.

The evidence adduced at the hearing is accurately set forth in the ALJ's cogent written decision. In her decision, the ALJ framed the issue presented as follows: "Must Patten be terminated because he did not purchase cannabis from

a licensed dispensary?" Citing N.J.A.C. 17:30-2.1(b)(1),[2] the ALJ answered the inquiry in the affirmative, finding it "unlawful for any person to obtain or possess a controlled dangerous substance, unless the substance was obtained directly, or through a prescription, from a licensed dispensary."

In her decision, the ALJ considered Patten was a lifelong resident of Jersey City, honorably discharged from military service, and hired as a JCPD officer in 2022. The judge credited Patten's statement that, at the time of the incident, he was "on disability leave for a work-related, left-hand injury." The judge noted although Patten was prescribed pain medication, he "felt [it] was not effective" and decided "to manage his pain with cannabis." The judge accurately summarized Patten's statements to IA and the administrative charges that followed. She also referenced the AG policy, prohibiting "adverse action against officers who use cannabis off duty under [CREAMMA]," and the JCPD order prohibiting officers "from using cannabis on or off duty, as it is illegal under federal law for cannabis users to possess, carry, or use firearms."

Turning to her conclusions of law, the ALJ thoroughly analyzed the applicable sections of CREAMMA and correctly recognized the "Act precludes

_____

[2] The ALJ mistakenly cited this regulation as N.J.S.A. 17:30-2.1(b). The CSC repeated the error in its ensuing decision.

adverse employment action simply for testing positive for cannabinoid metabolites, or for using cannabis, so long as it is not used during the workday and the employee is not intoxicated or impaired at work." The judge was satisfied, in the present matter, the JCPD neither alleged Patten used cannabis nor displayed any indication of intoxication while on duty.

Accordingly, the ALJ rejected the JCPD's argument Patten's termination was warranted, in part, simply because he tested positive for cannabis. The judge therefore concluded, by terminating Patten for testing positive for cannabis, the JCPD violated N.J.S.A. 24:6I-52 of CREAMMA. Similarly, the ALJ found the JCPD failed to sustain the following charges: inability to perform duties; neglect of duty; and incapacity.

Crucially, however, the ALJ also recognized the undisputed record established "Patten purchased the cannabis from Sal," who "[wa]s not a licensed cannabis dispensary." Because Patten did not purchase the cannabis "directly from a licensed cannabis retailer," the judge concluded his purchase violated CREAMMA. The ALJ found Patten specifically violated:

> N.J.S.A. 24:6I-32(c), for engaging in the unregulated distribution of cannabis; N.J.S.A. 2C:35-10a, for the unlawful possession of cannabis which was not prescribed for him or that was not directly obtained from a licensed dispensary or practitioner; and

N.J.[A.C.] 17:30-2.1(b)(1), for the unlawful purchase of cannabis from an unlicensed dispensary.

In reaching her decision, the ALJ addressed the JCPD's argument that Patten was terminated because he "purchased and consumed 'unregulated' cannabis from an unlicensed person," and Patten's contention that there was no evidence in the record "that the cannabis was 'unregulated.'" The ALJ concluded it was "irrelevant" whether the cannabis was regulated to prove a violation under N.J.A.C. 17:30-2.1(b)(1) because "the purchase, in and of itself," violated the regulation. Referencing the regulation, the judge emphasized "a consumer can purchase, possess, use, or transfer cannabis without remuneration where the 'cannabis item is obtained directly from a licensed cannabis retailer.'" See ibid. Quoting the findings and declarations section of CREAMMA, the judge noted this requirement "was designed to eliminate the problems caused by the unregulated manufacturing, distribution, and use of illegal marijuana within New Jersey." See N.J.S.A. 24:6I-32(c).

Accordingly, the ALJ upheld Patten's termination based on his purchase of unregulated cannabis. The judge also sustained the following charges: insubordination; conduct unbecoming a public employee; other sufficient cause; and violation of the AG Policy.

A-3126-23

Finally, in the penalty section of her initial decision, the ALJ applied the governing law, correctly recognizing, "Progressive discipline may only be bypassed when the misconduct is severe, when it renders the employee unsuitable for continuation in the position, or when the application of progressive discipline would be contrary to the public interest." See In re Herrmann, 192 N.J. 19, 33 (2007). The judge further recognized the misconduct need not "occur while the officer is on duty." See In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960). Citing our decision in Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965), the ALJ further acknowledged, "New Jersey has long recognized that a police officer is a special kind of public employee who represents law and order and must represent an image of integrity and dependability."

Based on these principles and the undisputed facts in this matter, the ALJ upheld the penalty of removal. The judge elaborated:

> Patten is not an ordinary citizen. He volunteered to be trained as a police officer and serve the public. He agreed to the rules and regulations of the JCPD. His sworn duty is to defend the laws of the State. One of the laws of the State is to purchase cannabis from a licensed dispensary. He knew what the law was, and he knew that he was violating the law when he purchased cannabis from an unlicensed individual.

Although the parties did not include their exceptions to the ALJ's initial decision in their appellate appendices, we glean their contentions from the CSC's final decision. In its decision, the CSC rejected Patten's exceptions, finding unpersuasive Patten's argument that the FNDA failed to charge him with "purchasing cannabis from an unlicensed dispensary." Because "the FNDA removed [Patten] for testing positive for cannabinoids (THC)," the CSC found "to raise an affirmative defense under [CREAMMA], the marijuana/cannabis that was purchased and ingested must have come from a regulated source." The CSC reasoned the record lacked any "corroborating competent evidence" that "'Sal' bought the cannabis legally for [Patten] without renumeration." The CSC noted Sal did not testify at the hearing and Patten failed to produce a receipt for his purchase.

Nor was the CSC persuaded by the JCPD's exceptions, which sought an affirmance with modification to include the inability to perform and neglect of duty charges. Citing its prior decisions in <u>Mansour</u> and <u>Polanco</u>, the CSC reiterated CREAMMA was not preempted by federal law. Accordingly, the CSC rejected the JCPD's argument that Patten's marijuana use barred him from possessing a firearm.

A-3126-23

On its de novo review, the CSC also was satisfied the removal penalty was warranted based on the circumstances presented here. The CSC therefore issued its decision, affirming the removal penalty and dismissing Patten's administrative appeal.

## II. Patten's Appeal

Before us, Patten raises six overlapping arguments challenging the CSC's decision. Contending the decision was arbitrary, capricious, and unreasonable, Patten asserts the CSC properly held his termination violated CREAMMA and, as such, wrongly upheld his termination. Patten further argues the CSC improperly adopted the ALJ's findings by: adding allegations to the disciplinary notices; misapplying the plain meaning of the term, "remuneration"; erroneously shifting the burden of proof; and failing to consider his lack of prior record and personal history in its termination penalty.

Our scope of review of an administrative agency decision is circumscribed. See In re Stallworth, 208 N.J. 182, 194 (2011). An agency decision will be upheld "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008);

see also Stallworth, 208 N.J. at 194. "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). "However, we are not bound by the agency's interpretation of a statute or resolution of a question of law." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001); see also Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018).

Our deference to agency decisions also "applies to the review of disciplinary sanctions." Herrmann, 192 N.J. at 28. That is because the CSC "is the entity charged with keeping State-government-wide standards of employee performance relatively consistent in disciplinary matters." See id. at 37. As our Supreme Court has made clear, "[S]o long as the discipline . . . falls within a continuum of reasonable outcomes, we must defer, for we have no charge to substitute our judgment for that of the statutorily authorized decisionmaker." In re Hendrickson, 235 N.J. 145, 161 (2018).

Accordingly, "A reviewing court should alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority.'" Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)). Further to our deferential standard of review,

11

we will reverse an agency's sanction only if the "punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29 (quoting Polk, 90 N.J. at 578). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." Id. at 29. We therefore lack the "power to act independently as an administrative tribunal or to substitute [our] judgment for that of the agency." Id. at 28; see also In re Carter, 191 N.J. 474, 486 (2007).

We have considered Patten's renewed challenges to the CSC's decision in light of the record and applicable legal principles, and conclude they lack sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), beyond the brief comments that follow. Pursuant to our limited standard of review, Stallworth, 208 N.J. at 194, we reject Patten's contentions and affirm, as did the CSC, substantially for the reasons expressed in the ALJ's comprehensive written decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D).

We briefly address Patten's contention that he was improperly terminated for uncharged conduct. Patten argues the disciplinary notices charged him only "with testing positive for cannabinoids and admitting legal cannabis

consumption in a later interview" – not "purchasing or consuming 'unregulated' cannabis." Patten therefore claims the CSC improperly adopted the ALJ's determination that he violated N.J.S.A. 24:6I-32(c), N.J.A.C. 17:30-2.1(b)(1), and N.J.S.A. 2C:35-10(a).

A civil service "employee must be served with a [PNDA] setting forth the charges and statement of facts supporting the charges (specifications), and afforded the opportunity for a hearing prior to imposition of major discipline, except [under circumstances not relevant here]." N.J.A.C. 4A:2-2.5(a). As our Supreme Court recognized, long before the regulation's adoption:

> Properly stated charges are a sine qua non of a valid disciplinary proceeding. It is elementary that an employee cannot legally be tried or found guilty on charges of which he has not been given plain notice by the appointing authority. The de novo hearing on the administrative appeal is limited to the charges made below.
>
> [W. New York v. Bock, 38 N.J. 500, 522 (1962).]

Patten's argument is belied by the amended PNDA and FNDA, which expressly state the circumstances under which he obtained unregulated cannabis in the narrative. Specifically, both notices state, "Patten purchased $40 worth of marijuana from an individual" he knew only as "Sal." The ALJ's findings are consistent with the narrative set forth in the amended PNDA. Moreover, before

13

the JCPD and the ALJ, Patten maintained he used regulated cannabis, thereby undermining his argument he lacked notice of the charges.

Lastly, we are unpersuaded by Patten's contention that the CSC improperly shifted the burden to him of proving he ingested unregulated marijuana. Simply stated, the record is bereft of any evidence of a regulated source of the marijuana Sal sold to Patten.

### III. The JCPD's Cross-Appeal

The JCPD maintains the CSC's decision should be modified to sustain the charges for inability to perform duties and neglect of duty because Patten tested positive for cannabis. The JCPD contends the GCA renders Patten unable to carry a firearm and thus unable to perform his duties. As it did before the CSC, the JCPD argues CREAMMA is preempted by federal law as the JCPD cannot comply with both CREAMMA's prohibition on adverse employment actions for regulated cannabis use and the GCA's mandate that "an unlawful user of . . . any controlled substance" shall not "possess" or "receive" "any firearm or ammunition." See 18 U.S.C. § 922(d)(3), (g)(3). The JCPD acknowledges the GCA exempts firearms when used for state purposes, but argues the exemption is inapplicable here because the JCPD requires officers to purchase their own

14

firearms and does not provide them with the certifications required to place their firearms beyond the scope of the GCA.

The CSC counters, "[T]he [GCA] expressly exempts from all relevant provisions those firearms and ammunition used by state or local law enforcement agencies." The CSC therefore argues, "[T]he [JCPD]'s employment of individuals who engage in off-duty cannabis use does not violate the [GCA]'s prohibition on the transfer of firearms and ammunition to controlled substance users."[3] Addressing the JCPD's assertion that JCPD policy requires officers to personally purchase firearms for use on duty, the CSC argues the exemption applies whether the JCPD or its officer obtains the firearm.

We review de novo preemption determinations and "the issues of statutory interpretation necessary to the preemption inquiry." In re Altice USA, Inc., 253 N.J. 406, 416 (2023); see also In re Rutgers, the State Univ. of N.J., 262 N.J. 523, 533 (2026).

Well-settled principles guide our review of preemption issues. Pursuant to the Supremacy Clause of the United States Constitution, "Congress is empowered to preempt state law." Altice, 253 N.J. at 416; see also U.S. Const.

---

[3] During oral argument before us in the Mansour and Polanco appeal, CSC asserted, in its preemption argument, the JCPD is an "outlier."

art. VI, cl. 2. Because "States are independent sovereigns in our federal system," Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996), however, "the preemption analysis begins with the 'assumption that the historic police powers of the States [are] not to be superseded by [a] [f]ederal [a]ct unless that was the clear and manifest purpose of Congress,'" Altice, 253 N.J. at 416 (alterations in original) (quoting Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008)). For example, in the labor law context, the United States Supreme Court has long recognized, "the establishment of labor standards falls within the traditional police power of the state." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987).

"Under the Supremacy Clause, federal law preempts state law in three circumstances." Altice, 253 N.J. at 417. In broad strokes, those categories are: (1) explicit preemption, "Congress explicitly preempts state law"; (2) field preemption, "Congress regulates conduct in a field it intended to occupy exclusively"; and (3) conflict preemption, where there is an actual conflict between state and federal law. Ibid.

To support its argument in the present matter, the JCPD raises conflict preemption. "Conflict preemption occurs in two scenarios." Hager v. M&K Constr., 246 N.J. 1, 29 (2021). Conflict exists when: (1) "compliance with both federal and state regulations is a physical impossibility"; or (2) a state's law

"stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  In re Reglan Litig., 226 N.J. 315, 329 (2016) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)). Based on its assertion that the JCPD "cannot comply with both CREAMMA and the [GCA]," the JCPD apparently raises only an impossibility argument.

Under the GCA, Congress imposed various requirements and prohibitions on the provision of firearms and ammunition to certain groups.  Pertinent to this appeal, it is "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe such person . . . is an unlawful user of or addicted to any controlled substance." 18 U.S.C. § 922 (d)(3); see also 18 U.S.C. § 922 (g)(3) (prohibiting any such person from, in relevant part, possessing or receiving any firearm or ammunition).  It is undisputed cannabis is a controlled substance under federal law.

As the CSC correctly states, in the GCA, Congress distinguished between firearms and ammunition issued for private and government use.  When firearms and ammunition are issued for use by the government, most of the GCA's provisions are removed:

> The provisions of this chapter, except for sections [not at issue here,] shall not apply with respect to the

transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of . . . any State or any department, agency, or political subdivision thereof.

[18 U.S.C. § 925(a)(1) (emphasis added).]

Accordingly, when firearms or ammunition are "issued for the use of" a police department, such as the JCPD, the restrictions imposed under 18 U.S.C. § 922 are eliminated. See, e.g., Hyland v. Fukuda, 580 F.2d 977, 979 (9th Cir. 1978) (recognizing "the plain terms of section 925(a)(1) remove firearms owned by the state and used exclusively for its purposes from the limitations of section 922" (emphasis added)); Clifton v. U.S. Dep't of Justice, 615 F. Supp. 3d 1185, 1190 (E.D. Cal. 2022); Keyes v. Sessions, 282 F. Supp. 3d 858, 866 (M.D. Pa. 2017) (noting under section 925(a)(1), the plaintiff was permitted to "possess and operate numerous firearms" as a State Police trooper, but not "in his personal capacity under federal law").

In section 927, Congress expressed the GCA's effect on state law:

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

A-3126-23

As we have observed, "the [GCA] was designed to have a preemptive effect only where there is 'a direct and positive conflict' when state law and the federal statute 'cannot be reconciled.'" In re Carry Permit of Andros, 403 N.J. Super. 271, 279 (App. Div. 2008) (quoting City of Gary v. Smith & Wesson Corp., 94 F. Supp. 2d 947, 951 (D. Ind. 2000)); see also 18 U.S.C. § 927. We see no conflict here.

We conclude the JCPD may comply with both the GCA and CREAMMA. Because the GCA does not preempt CREAMMA, we discern no error in the CSC's decision that Patten's cannabis use did not render him unable to perform his duties and the results of his drug test cannot sustain a neglect of duty claim. We therefore affirm the CSC's May 10, 2024 decision.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19